# CHARLESTON.

## STATE v. HUFFMAN.

Submitted October 31, 1911.     Decided November 21, 1911.

1. ARSON—*Indictment—Value of Property.*

   It is unnecessary in an indictment for arson, under section 6, chapter 145, Code 1906, to charge the value of the building and the property therein separately; and an indictment charging the value of the building and contents as a whole is good on demurrer.  (p. 771).

2. CRIMINAL LAW—*Evidence—Similar Offenses.*

   On the trial of an indictment for arson evidence of numerous other fires and depredations suffered by the owner of the property burned, covering a series of years immediately preceding the burning of the building .charged in the indictment, though not traced to defendant, is admissible on the issue whether such fire was accidental, or the work of an incendiary.  (p. 772).

3. SAME—*Evidence—Opportunity.*

   The evidence showing that most of such other fires and depredations occurred on Sunday, when the owner of the property and his family were absent at church, evidence of ·defendant's general habit of absenting himself from church on that day was not incompetent, on the question of opportunity .of defendant to commit the other offences occurring on that day, and as tending to connect him therewith, and, under an exception to the general rule, as tending to show intent, malice and the like, and bearing on the question of his guilt or innocence of the offence charged in the indictment.  (p. 775).

4. SAME—*Trial—Instructions—Reasonable Doubt.*

   Though it is the better practice to combine them in one comprehensive instruction, it is not error on the trial of an indictment for arson, to state to the jury the law of reasonable doubt applicable to the whole case, in several distinct instructions or legal propositions to the jury.  (p. 775).

5. SAME—*Trial—Instructions Already Given.*

   As many times decided, it is unnecessary to repeat instructions which have already been given to the jury.  (p. 776).

6. SAME—*Trial—Instructions—Requests—Objection to ,Modification. —Waiver.*

   Though, by the statute of 1907 the right is given a party to object to the modification of a proposed instruction to the jury,

and if modified over his objection, to have the same as modified given as the court's instruction, and read in the order prescribed by the statute, yet, if without objection, the court is permitted to read such modified instruction as the instruction of the proponent thereof, such right will be regarded as having been waived. (p. 776).

7.   SAME—*New Trial—Newly Discovered Evidence—Diligence.*

The rule applicable to motions for new trial based on after discovered evidence, stated in *Jacobs* v. *Williams*, 67 W. Va. 377, applied to the facts in this case, and justifying the court below in denying the motion. (p. 777).

Error to Circuit Court, Nicholas County.

C. B. Huffman was convicted of arson, and brings error.

*Affirmed.*

*Conley & Duff* and *Osenton & Horan*, for plaintiff in error.

*William G. Conley*, Attorney General, and *J. O. Henson*, Assistant Attorney General, for the State.

MILLER, JUDGE:

The indictment, on which defendant was found guilty, and by the judgment below, sentenced to an indeterminate term of imprisonment in the penitentiary, charged, substantially in the language of the statute, section 6, chapter 145, Code 1906, that the defendant "on the ———— day of March, 1910, in said county of Nicholas, féloniously and maliciously did burn a certain building, to-wit, a granary, the property of J. J. Reynolds, situate in the said county, which said building and the property therein was then and there of the value of two hundred dollars."

The first point of error is, that the demurrer should have been sustained. The statute reads: "If a person maliciously burn any building, the burning whereof is not punishable under any other section of this chapter, he shall, if the building with property therein be of the value of one hundred dollars or more, be confined in the penitentiary not less than three nor more than ten years; and if it be of less value, be so confined not less than two nor more than five years, or in the discretion of the court, in jail not more than one year, and be fined not exceeding five hundred dollars."

It is insisted that under this statute, the indictment should have charged separately, the value of the building and the property therein, so as to give the prisoner notice. The indictment does charge the value of the building and contents. This is all the statute requires. It is generally sufficient to charge a statutory crime in the language of the statute. *State* v. *Gould,* 26 W. Va. 268, 252; *People* v. *Murray,* (Mich.) 6 Amer. Cr. Rep. 31; 1 Bishop's New Cr. Pro. (4th ed.) section 611. In *Wolf* v. *Com.,* 30 Grat. 833, the demurrer to an indictment under the same statute, was grounded on the proposition that the offense was not charged with sufficient certainty, there being no allegation that there was actually any property in the barn, alleged to have been burned, and that the property therein was not specified, or in any way stated so as to give defendant any notice of what he was called upon to answer. The Virginia court was of opinion the point was without merit, observing that the indictment was framed nearly in the language of the statute, and that there was nothing in the statute requiring that the property in the building be described independently of the building; that the term of imprisonment being fixed by the value of the building and the property therein, wholly matters of proof, the prisoner could not have been surprised by the manner of alleging the offense. This point must therefore be overruled.

The second point of error is that the court below erred in admitting on behalf of the state, (1) evidence in chief, of other fires and acts of trespass suffered by said Reynolds, covering a period of several years prior to the burning of the granary in question; and, (2) evidence of defendant's habit of absenting himself from church on Sunday.

Much evidence was admitted over the objection of the prisoner, of the burnings of storehouses, barns, fences, hay stacks, and of fires set out in the wood lands of said Reynolds; also of the poisoning of his cattle, and laying down of his fences, and of the turning of stock into his growing crops, and of other depredations suffered by him, covering the period from 1895, down to the year 1910, and showing, not that all, but that many of these things had occurred on Sunday. The state did not undertake to in any way connect the prisoner with either of these offenses. The defendant on the stand, denied all responsibility for or connection with these many offenses, and no attempt was afterwards

made by the state to connect him with them, except the one charged in the indictment. When the prisoner, on his defense, put in issue his previous good character and reputation, on cross examination, and for the purpose of testing the truthfulness of defendant's character witnesses, the state was permitted to ask them whether they had not heard the defendant charged with some of those depredations, with result that one of them at least answered that he could not testify as to defendant's good character subsequent to those burnings. Counsel urgently insist that this evidence, and the evidence of his Sunday habits, was very prejudical to the prisoner, and that its admission demands a reversal of the judgment below, and a new trial.

The general rule against the admissibility of evidence of other crimes, as stated in Underhill on Cr. Ev., section 87, *Walker* v. *Com.* 1 Leigh, 574, and other authorities, is invoked. In this case, however, no attempt was made to connect the prisoner with other crimes. According to the general rule relied on, this evidence, for such a purpose would have been inadmissible. According to the attorney general, however, the evidence admitted was offered for entirely a different purpose, namely, as tending to show that the burning in question was not accidental, but the work of an incendiary. He argues that evidence of the fact that Reynolds had suffered so many prior depredations, covering a series of years immediately preceding the one charged against the defendant, of incendiary origin, tended to dispel any doubt that the fire in question was also the work of an incendiary, a fact necessary to be established before the accused could be connected therewith, and that in as much as such crimes, as in this case, are always clandestinely planned and secretly executed, and must be established in most cases by circumstantial evidence, the fact and circumstances of the other offences became most important as tending to dispel all doubt.

The authorities cited and relied on by the attorney general, and other authorities, seem to support the proposition, that where such evidence tends to show that the other fires were a part of one connected scheme or purpose of the defendant; or as tending to show that the particular fire with which the accused is charged was not accidental; or when, together with other evivence, it tends to show motive or intent, or to identify the accused with the offense charged, it is admissible. 5 Am. & Eng.

Ency. Law and Pract. 633; 3 Cyc. 1007; *State* v. *McMahon,* 17 Nev. 365; *State* v. *Ward,* 61 Vt. 153, 181; *State* v. *Hallock,* 70 Vt. 159; *State* v. *Thompson,* 97 N. C. 496; *People* v. *Murphy,* 135 N. Y. 450, 457; *People* v. *Molineux,* (N. Y.) 62 L. R. A. 193. Note, on Evidence of other Crimes in Criminal cases, and particularly that part of the note, under the different heads, relating to arson. Underhill on Cr. Ev., section 89; *Sykes* v. *State,* (Tenn.) 105 Am. St., note, 976. See, also, *State* v. *Hyde,* 234 Mo. 200.

Generally where evidence of previous offenses has been admitted for any of the purposes indicated they have been in some way traced to the defendant, but as we understand the authorities, this is not a prerequisite to its admission, if it is intended to be limited to proving that the particular fire in question was not accidental. 1 Wigmore on Evidence, section 354; *People* v. *Murphy,* 135 N. Y. 456; *State* v. *Rohfrischt,* 12 La. Ann. 382. Wigmore says: "Moreover, the principle of anonymous intent is recognized as being here occasionally of peculiar utility; i. e. the recurrence of a similar fire may tend decidedly to negative innocent intent, even though the author of the other fires is not shown; then the prosecution having negatived innocent intent in the present fire by whomsoever set, the defendant may be shown to have kindled it." Our trouble in the case at bar has been whether the evidence of so many fires and other depredations running back over so many years and disconnected in time, circumstances, and character, as these were, was properly admissible, as falling within the rules and principles of the decisions and the text writers cited. We have concluded, however, that taken in connection with the evidence of the bad feeling of the prisoner towards Reynolds, beginning about the same time, the unusual number of these offences, the peculiar character of them, and the time and circumstances of their occurrences, and taken in connection with all other evidence in the case, the evidence was admissible, at least on the question of the incendiary character of the fire in question. That Reynolds, a near neighbor of defendant should have sustained so many and unusual losses of property by fire and otherwise, beginning almost coincidently with the commencement of his troubles with the accused is very significant, and constitute a composite fact bearing not only on the fact of incendiarism, but also, in the absence

of any evidence of motive or opportunity on the part of any other person, pointing strongly to the prisoner as the guilty person. For these reasons we are not disposed to sustain this point of error.

On the question of the admissibility of the evidence relating to defendant's Sunday habits, we are not disposed to attach much importance to this evidence. We do not see that it could have materially prejudiced the prisoner. The position of his counsel is that, in a rural community, it tended to prejudice him greatly with the jury, contrasted as it may have been with the church going habits of Reynolds, shown in evidence. This was not the purpose of the evidence. Moreover, the evidence of the prisoner, and others, shows that he did frequently attend church on Sunday, his wife and family more frequently, though not so regularly perhaps as Reynolds and his family. We do not think an impartial jury of his own county, sitting in judgment upon the crime with which defendant stood charged, could have been prejudiced against him by this evidence. As showing opportunity to commit the numerous other offences it may be classed along with evidence of the fact of his place of residence, and his situation in time, place and circumstance with reference to those offences, and as constituting a fact or circumstance pointing to the prisoner, as the perpetrator of those crimes, and pertinent under the authorities cited, as an exception to the general rule, to show intent, malice and the like, and tending to show guilt of crimes of like character to that charged against him in the indictment. We overrule the point.

Relying on *State* v. *Legg,* 59 W. Va. 315, in which Judge SANDERS, arguendo, inveighs against the practice of propounding numerous instructions to the jury on the same subject, not a point of the syllabus, counsel for the prisoner complain that the court below erred in giving to the jury State's instructions numbered 3, 4, 6, 7, 8, and 11, defining reasonable doubt. If this be error, like error was committed at the instance of defendant's counsel. But we do not see that any error was committed. The instructions complained of consisted of several short propositions, which might very properly have been embraced in a single instruction, applicable to the whole case, on the law of reasonable doubt. It is not pretended that these segregated propositions, or taken together, do not propound the law cor-

rectly; but only that, separated they emphasize too prominently the subject of reasonable doubt. The several propositions are well supported by prior decisions, and need not be repeated. This point must also be overruled.

The rejection of the prisoner's instructions numbered 22 and 23 is the subject of the next point of error. In the bill of exceptions certifying these instructions the court below gives the same reason for rejecting them, that it gives for rejecting numerous other instructions covered by the same bill of exceptions, namely, that they were covered by other instructions, given, and that they were wholly unnecessary and superfluous. The answer of the court below is a good one, and we make the same response. The court need not repeat instructions which have already been substantially given. *State* v. *Bingham,* 42 W. Va. 234; *Kerr* v. *Lunsford,* 31 W. Va. 659.

The prisoner objecting to their modification, the court modified, and gave to the jury as modified, and as his instructions, defendant's instructions numbered 17 and 19. This is the subject of another point of error. It is not claimed that as modified, and given, these instructions did not propound correct legal propositions, on the subject of circumstantial evidence, to which they related; but that after modifying them, the court, in violation of the statute of 1907, in place of reading the instructions in the order required, as the instructions of the court, they were read as the instructions of the defendant. The court fully covered the subject of these instructions by instruction number 20, given for the prisoner, and might properly have refused instructions number 17 and 19 on this ground, but this is not the point of the exception. What counsel for prisoner complain of is, that the court after his objections to the modifications, gave the instructions as modified, as the instructions of the prisoner. In its bill of exceptions certifying these instructions the court below, says that they were so given, without any objection by the defendant at the time to their being given as his instructions. We decided in *State* v. *Clark,* 64 W. Va. 625, and we think properly, that the statute in question is mandatory; but, as there held, the right given by the statute may be waived by the party. According to the record, no objection was interposed by the prisoner, to the reading of these instructions, as modified, as his instructions, and within the rule of *State* v. *Clark,* we think

the prisoner thereby waived his right. He should have objected at the time, if he relied upon the statute; and we may properly conclude, no objection being interposed, that he was willing that the court should give the instructions, as modified, as his instructions.

As we cannot say the verdict is unsupported by the evidence, the only other point of error relied upon is, the refusal of the court to award a new trial on the ground of after discovered evidence. The motion for a new trial on this ground was based on the affidavit of C. F. McQueen, a deputy sheriff, supported by the affidavits of the prisoner and his counsel, as to the time of the discovery of this witness, and the evidence he would give. The affidavit of McQueen relates to the part he took in measuring the tracks, leading to and from the granary in question, on the morning after the fire; and the relations those tracks bore to certain sticks used in measuring them, exhibited before the jury in connection with the testimony of other witnesses; and to the comparisons he had made after the trial, between the lengths of those sticks and the length of the overshoes of the prisoner, exhibited on the trial. His evidence would have been purely cumulative of the evidence of other witnesses, examined on the trial. The witness disclosed his identity and evidence to the prisoner's counsel at the bar of the court before the arguments were concluded, or the case was submitted to the jury, and although it is shown by affidavit that the prosecuting attorney declined the request of the prisoner's counsel that the witness be then permitted to make his statement to the jury, no motion was made to the court to permit the witness to testify before conclusion of the argument and the submission of the case to the jury. Besides all this, the record shows that Reynolds, the first witness for the state, on a trial which lasted several days, disclosed the fact in the beginning of his testimony, that McQueen had been present when the tracts were examined and measurements taken, and that although present in the court room during the progress of the trial, so far as the record shows, neither the prisoner, nor his counsel, made any inquiry of him to ascertain what evidence he could give. This does not show such due diligence as the law requires, to secure a new trial on after discovered evidence. The legal principles upon that question have

been too frequently announced to require repetition.  *Jacobs* v.
*Williams,* 67 W. Va. 377.

The record shows the prisoner was given a fair trial, by an
able and painstaking judge, and had the assistance of very able
counsel in his defense; and though convicted upon circumstan-
tial evidence for the most part, it was by a jury of his own county,
and we ought not disturb their verdict, except for substantial
reasons.  Having discovered no errors of law, therefore, our
plain duty is to affirm the judgment.

*Affirmed.*