STATE OF WEST VIRGINIA

*v.*

FINLEY GREGORY

(No. 10970)

Submitted September 16, 1958. Decided November 11, 1958.

*Richard E. Davis, John D. Downes,* for plaintiff in error.

*W. W. Barron,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

BROWNING, JUDGE:

The defendant, Finley Gregory, was jointly indicted with one Howard Wilson by the grand jury attending the October, 1954, term of the Circuit Court of Monongalia County. The indictment, No. 6235, was composed of two counts, the first charging the breaking and entering, with intent to commit larceny of a certain storeroom or building in Monongalia County, and the subsequent larceny of $39.00 therefrom, and the second charging an entering without breaking of the same building with intent to commit larceny, and the subsequent larceny of $39.00 therefrom. Howard Wilson was convicted, upon his plea of guilty to the indictment, at the October, 1954, term of court and sentenced to imprisonment in the State Penitentiary. The defendant, being then out of the jurisdiction, did not appear to answer to the indictment and a capias was issued for his arrest.

Defendant was arrested by local authorities in Tampa, Florida on January 8, 1957, and a bond was executed by him conditioned upon his appearance before the Circuit Court of Monongalia County on January 25, 1957 to answer to the indictment, January 25 being a regular day of the January term of that court, which term began on January 10, 1957. Defendant appeared on the day speci-

fied, with counsel, moved to quash the indictment and filed a written demurrer thereto. He then moved the court to require the State to file a bill of particulars. The court took the several motions and demurrer under advisement and defendant entered a plea of not guilty. Jury trials were held by the Circuit Court of Monongalia County during the month of February, and the January term was adjourned on March 15, 1957, without further action in regard to defendant. The regular April and July terms of the Circuit Court of Monongalia County were held and adjourned without a trial of defendant upon the indictment and it is agreed by counsel that the failure to bring defendant to trial was not occasioned by any of the reasons set forth in Code, 62-3-21, which provides for discharge of an accused if there be three regular terms of court, after the indictment is found against him, without a trial, unless such failure to try was caused by one of the several reasons set forth therein.

On October 10, 1957, defendant was reindicted by the grand jury attending the October, 1957, term of the Circuit Court of Monongalia County, the indictment being No. 6598 and identical with, and charging the same offenses, as indictment No. 6235. An order of nolle prosequi was subsequently entered as to indictment No. 6235 on November 11, 1957.

The defendant moved to quash indictment No. 6598 on the ground that three terms had elapsed without trial since the return of the original indictment, and also demurred to the indictment, which motion and demurrer were overruled and the case proceeded to trial on November 18, 1957.

On the trial of the case, the evidence is undisputed that the entry into the building was accomplished by a breaking, and there was also sufficient evidence to sustain the jury's verdict of guilty. The defense was an alibi, supported by statements of members of the defendant's family that he had remained at home the evening and night of June 21, the night the offense was committed, all of whom fixed the date by a brother-in-law's attendance

at National Guard drill that evening. National Guard records were introduced to show that the brother-in-law attended drill the night of June 22, rather than June 21.

The jury returned an oral verdict finding the defendant "guilty as charged under both counts of the indictment.", which the court accepted as a general verdict of guilty, and the verdict was recorded as: "We, the jury, find the defendant, Finley Gregory, guilty as charged in the within indictment.", to all of which the defendant objected.

Sixteen assignments of error are made in this Court, only five of which merit any discussion on this writ of error.

The Sixth Amendment to the Constitution of the United States provides in part: "* * * In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * *." Article III, Section 14, of the Constitution of this State provides in part: "Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, * * *." In implementing the last quoted constitutional provision, the Legislature of this State, in Code, 62-3-21, provided as follows: "Every person charged with felony, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict." The only change in this section since the formation of this State is the substitution of the words "court of competent jurisdiction" for the original words "circuit courts".

The defendant in this case was indicted approximately three and one-half years before he was taken into custody

upon the charge for which he was indicted, and this Court long ago recognized the fact that the Legislature in enacting the provisions of Code, 62-3-21, could not have intended that a defendant would be forever discharged if more than three terms of court elapsed under such circumstances.

In *State* v. *Kellison,* 56 W. Va. 690, 47 S. E. 166, the word "remanded" was construed as if the statute had used the word "held". Inasmuch as the defendant in this case did not submit himself to the jurisdiction of the Circuit Court of Monongalia County until the 25th day of January, 1957, that being fifteen days after the January term had begun, this Court holds that the January term of that court is not to be counted as one of the three terms ensuing prior to the time that the defendant was brought to trial.

State's Instruction No. 1, given over objection of the defendant, told the jury that under the indictment in this case they could find one of four verdicts, to-wit: (1) Guilty of breaking and entering; (2) guilty of entering without breaking; (3) guilty of grand larceny; or (4) not guilty. Furthermore, State's Instruction No. 3 informed the jury that the crime of grand larceny is committed when one or more persons take, steal and carry away anything of value belonging to another, against the will of the owner, of the value of $20.00 or more. There could have been no doubt about the correctness of this instruction had this defendant been brought to trial prior to February 19, 1957. However, the Legislature of this State, on February 19, 1957, passed the following act effective from passage:

> "AN ACT to amend and reenact section thirteen, article three, chapter sixty-one of the code of West Virginia, one thousand nine hundred-thirty-one, as amended, relating to grand and petit larceny distinguished; penalties.
>
> "Be it enacted by the Legislature of West Virginia:

"That section thirteen, article three, chapter sixty-one of the code of West Virginia, one thousand nine hundred thirty-one, as amended, be amended and reenacted to read as follows:

"Section 13. Grand and Petit Larceny Distinguished; Penalties.—If any person commit simple larceny of goods or chattels, he shall, if they be of the value of fifty dollars or more, be deemed guilty of grand larceny, and, upon conviction thereof, shall be confined in the penitentiary not less than one nor more than ten years; and if they be of less value, he shall be deemed guilty of petit larceny, and, upon conviction thereof, be confined in jail not exceeding one year."

Chapter 41, Acts of the Legislature, Regular Session, 1957. The Legislature thus raised the line of demarcation between the crimes of grand larceny and petit larceny from the taking of goods valued at $20.00 or more to the taking of goods of the value of $50.00 or more. It will be observed that the defendant committed the alleged offense charged in this indictment in 1954, was indicted therefor in that year, and was finally brought to trial on November 18, 1957, upon an indictment returned at the October, 1957 term of the Circuit Court of Monongalia County, the old indictment having, on a previous day of that term, been nolled. It has been contended in behalf of the defendant that inasmuch as the old law, making it a felony to commit larceny of goods valued at $20.00 or more, was "repealed" by Acts of the Legislature, Regular Session, 1957, heretofore quoted, the defendant could not thereafter be tried under the old law. The authorities in support of that contention have been carefully reviewed, particularly the case primarily relied upon, *Ex parte Wright*, Texas Court of Criminal Appeals, 199 S. W. 486. It, and other cases cited by defendant, are to be distinguished in that the statutes of those jurisdictions relating to the effect of the repeal of a law differ from that of this State.

It will be observed that, from reading the act passed by our Legislature on February 19, 1957, no prior act was "repealed". The section of the Code relating to grand and

petit larceny was "amended and reenacted." However, assuming that the effect of the amendment and reenactment was to repeal the former law making the stealing of goods of the value of $20.00 or more a felony, Code, 2-2-8, must be considered. It reads as follows: "The repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred, before the repeal took effect, or the law expired, save only that the proceedings thereafter had shall conform as far as practicable to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect."

The 1st Syllabus Point of *State of West Virginia* v. *Mason,* 141 W. Va. 217, 89 S. E. 2d. 425, reads: "An act of the Legislature which repeals and simultaneously re-enacts a statute relating to a specific offense does not interrupt the continuous force of such statute, and an indictment thereunder may validly charge a 'second offense', even though the conviction of the alleged 'first offense' occurred prior to such repeal and re-enactment." In the opinion, this language from *State* v. *Tippens and Medley,* 91 W. Va. 504, 113 S. E. 751, was quoted with approval: "* * * In these modifications by amendment and reenactment, the former law was not repealed. Except in so far as it has been altered, it still remains in force and was not destroyed nor discontinued by the amendments. * * *. But, if it had been repealed, an offense committed under it, before repeal thereof, would not be condoned nor forgiven. * * *" To the same effect is *State* v. *Abbott,* 8 W. Va. 741. Compare *State* v. *Fisher,* 126 W. Va. 117, 27 S. E. 2d. 581. This Court finds that it was not error for the trial court to give to the jury State's Instructions Nos. 1 and 3.

The court refused to give to the jury Defendant's Instruction No. 7 which would have told the jury that when

a person on trial charged with a crime puts his character in issue by introducing evidence that he is a person who has been an orderly and law-abiding citizen, then the State has a right to introduce evidence of his bad character, and if it fails to produce such proof, then the presumption of law is that it has no proof to offer "and that the testimony of the defendant's witnesses as to his character is true." Counsel for the defendant in their brief state that this instruction was taken verbatim from Lee, The Criminal Trial of the Virginias, Section 401, Volume 2, Page 252, and that is true. They also state that it is taken from the record of *State* v. *Huffman,* 69 W. Va. 770, 73 S. E. 292. No such instruction is discussed in the opinion in the *Huffman* case, and no reference thereto is made in the syllabus. However, an examination of the original record of the case does show that an instruction identical to that appearing in Lee, The Criminal Trial of the Virginias, and identical to Defendant's Instruction No. 7, which was offered in this case, was given in the *Huffman* case, but that there was no objection noted thereon by counsel for the State. We find that it was not reversible error to refuse this instruction which tells the jury that if the State offers no evidence in rebuttal to the defendant's character witnesses, there is a presumption of law that the testimony of the defendant's witnesses is true. Even if no testimony is offered to rebut the evidence of the defendant's witnesses upon that point, it is still within the province of the jury to believe or not believe one or more of the witnesses who so testified for the defendant.

Defendant's Instruction No. 16 is a reasonable doubt instruction which ends thus: "* * * for the policy of our law deems it better that many guilty persons should escape rather than one innocent person should be convicted." It was not error to refuse this instruction, inasmuch as the jury was thoroughly instructed upon the law relating to the presumption of innocence and reasonable doubt in other instructions given in behalf of the State and the defendant. However, we believe it necessary to discuss Instruction No. 16 for the reason that, in 1 Lee,

Criminal Trials, Section 673, *State* v. *Staley*, 45 W. Va.
792, 32 S. E. 198, is cited as authority for the validity of
this instruction. The instruction as offered does appear in
Lee's Criminal Trials in the exact form offered, but it was
not approved in *State* v. *Staley, supra.* On the contrary,
the Court in the opinion in that case stated, in discussing
the instruction: "* * * Instruction No. 8 is also upon the
question of reasonable doubt, but goes much further that
the other instructions given on that point, and which
fully propound the law, while No. 8 would, if given, tend
to confuse and mislead the jury, and was properly re-
jected. * * *"

The witness Singleton, former Chief of Police of the
City of Morgantown, testified as to the good character of
the defendant in the year 1954, and prior thereto. Ap-
parently, in an effort to contradict this witness, the State
in rebuttal, over objection, proved by the witness Phillips,
who, in 1954, was a Deputy Sheriff of Monongalia County,
that a police officer of the City of Morgantown named
Davies had in the year 1954 told Phillips that defendant
was suspected of being involved in a series of breakings
and enterings in Monongalia County, and gave the wit-
ness Phillips some kind of notation to that effect. There
was no foundation laid for such testimony while Single-
ton was on the witness stand, and even if there had been,
the testimony of Phillips would have been inadmissible
unless it was shown that Singleton knew what Davies
knew. For whatever purpose it was offered, this evidence
was pure hearsay and it was error to overrule the objec-
tion to it. However, the defendant's character had been
put in issue, and considerable testimony had been elicited
from witnesses by both counsel for the defendant and
counsel for the State, relative to defendant's alleged asso-
ciation with two other men who had been accused of par-
ticipating in a series of crimes in Monongalia County dur-
ing, and perhaps before, the year 1954. One of these men
pleaded guilty to the same offense for which the defendant
was convicted in this case. For that reason, this Court is
of the view that the testimony of the witness Phillips,

near the end of the trial, as to what the police officer Davies told him, was not reversible error.

One of the assignments of error, as heretofore stated, relates to the validity of the verdict of the jury. In their brief, counsel in one sentence stated this assignment, but it is not thereafter referred to. After the verdict was reduced to writing in this form: "We, the jury, find the defendant, Finley Gregory, guilty as charged in the within indictment.", the trial court asked the twelve jurors to "Now hearken unto your verdict, as recorded by the Clerk.", to which there were no dissents, and, thereafter, the foreman signed his name to it. It is the duty of a trial court to reform defective verdicts, in the presence of the jury and before it is discharged, as to matters of form. *Carpenter* v. *Comm.,* 193 Va. 851, 71 S. E. 2d. 377; *Williams* v. *Comm.,* 153 Va. 987, 151 S. E. 151; *Porterfield* v. *Comm.,* 91 Va. 801, 22 S. E. 352. While, perhaps, the better practice would have been for the court to amend the verdict as to form, then send the jury back to its room with the amended verdict, and, on its return therefrom, to ascertain, by interrogating the jury as to whether the verdict, as amended, is its verdict, as stated in *State* v. *Hayes,* 136 W. Va. 199, 67 S. E. 2d. 9, however, upon the particular facts and circumstances, the procedure followed in the instant case did not constitute reversible error.

Upon a careful review of this entire record, we find no prejudicial error in the trial of this case. Therefore, the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*