STATE *ex rel.* ALBERT RICHARD PARSONS

*v.*

HONORABLE D. E. CUPPETT, JR., *Judge, etc.*

(No. 13128)

Submitted October 26, 1971.   Decided November 23, 1971.

470

*Duke A. McDaniel, H. R. Athey,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Willard A. Sullivan,* Assistant Attorney General, for respondent.

CARRIGAN, JUDGE:

This is an original proceeding in prohibition instituted by Albert Richard Parsons, petitioner, against the Honorable D. E. Cuppett, Jr., Judge of the Circuit Court of Grant County, respondent, hereinafter referred to as "the court," in which petitioner seeks to prohibit his prosecution under an indictment charging petitioner with the murder of his wife, Ruth Parsons.

On September 20, 1971, this Court issued the rule in prohibition returnable October 5, 1971, and, after a continuance, the case was submitted for decision upon briefs and oral arguments of counsel for both sides on October 26, 1971.

Terms of the Circuit Court of Grant County are held in April, July and November. The first day of the terms of court involved in this proceeding are April 1, 1969, July 8, 1969, November 4, 1969, April 7, 1970, July 14, 1970, November 3, 1970, April 6, 1971 and July 13, 1971.

Petitioner was indicted on April 1, 1969, for the murder of one Keplinger and on the same date was also indicted

for the murder of his wife. On that date petitioner, by counsel, moved for a psychiatric evaluation pursuant to Code, 62-3-9, as amended, and the court ordered that defendant be examined by two physicians in Petersburg. These two physicians reported on April 2, 1969, that the petitioner was insane at the time the crime was committed but was competent to stand trial. On April 17, 1969, the State moved that petitioner be examined either at Weston State Hospital or by a private psychiatrist to be chosen by the State, to which the petitioner objected and excepted. The court granted the State's motion and required the petitioner to submit to further mental evaluation by two doctors in Charleston who recommended in July 1969 that petitioner be confined to a state hospital for further observation and treatment.

On July 18, 1969, the court, on its own initiative, committed the petitioner to Weston State Hospital. On April 8, 1970, the Acting Superintendent of Weston State Hospital advised the court that the petitioner was competent to stand trial. However, petitioner was not returned to Grant County until after May 2, 1970. Thus the July 1969, November 1969 and April 1970 terms of court had passed.

During the April 1969 term the petitioner, by counsel, moved that the State be required to furnish a bill of particulars, for disclosure of certain pictures and other evidence held by the State and for a view of the scene of the crime, and in October 1970 also made certain other pretrial motions. It does not appear from the record that any of these motions were passed upon by the court.

On July 3, 1970, the State moved the court to make another determination of petitioner's competency to stand trial. The July term started July 14, 1970 and on July 18, 1970 the court ordered an up-to-date evaluation of petitioner's mental condition. On July 29, 1970, a hearing was held regarding this issue with testimony being given before the court by five psychiatrists. On that date the court determined that there was a conflict in the medical evidence and ordered the petitioner examined and evaluated at the Appalachian Mental Health Center. By report dated

August 11, 1970, a clinical psychologist at the Center indicated that petitioner was competent to stand trial, which conclusion was likewise reflected in an order of the court dated August 25, 1970.

During the November 1970 term of court, petitioner was tried under the indictment charging the murder of Keplinger, which trial resulted in a hung jury. Petitioner was again tried under the Keplinger indictment during the April 1971 term, and again a hung jury resulted.

Petitioner's trial under the indictment charging the murder of his wife was then set for the July 1971 term. Petitioner moved the court that he be forever discharged from prosecution under this indictment because of the "three term rule," which motion was overruled. Petitioner then presented his petition for a writ of prohibition to this Court.

Code, 62-3-9, as amended, provides for the action to be taken by a court of record or judge thereof when any person charged with or convicted of a crime, or acquitted thereof because of a mental condition, is thought to be mentally ill or mentally defective. This section provides in part:

> * * * The judge shall appoint two physicians to examine such person and report in writing on his mental condition. If on the basis of the reports the judge is satisfied that such person is mentally ill or mentally defective, he may order that such person be committed to a State institution.

This section further provides:

> Upon his recovery the court shall order that he be returned for the disposition of the charges against him. Thereupon the court shall proceed to dispose of the case as if there had been no commitment.

Code, 62-3-21, as amended, provides for the discharge of an indicted person for failure of the State to try within three terms after the term in which the indictment is returned unless the failure to try is excused by the reasons

therein enumerated, one of the excuses being the insanity of the accused. This is the so-called "three term rule."

Since petitioner moved for a psychiatric examination at the April 1969 term, it was proper for the court to order an examination of petitioner in April 1969, and also to commit petitioner to the Weston State Hospital, all pursuant to Code, 62-3-9, as amended.

> When a motion is made by defendant's attorney to have a defendant examined by a psychiatrist, the state or judge can assume that a plea of insanity will be made, and it is entirely proper for the court to order a similar examination under the provisions of Code, 62-3-9, as amended. Point 4, Syllabus, *State* v. *Angel,* 154 W.Va. 615, 177 S.E.2d 562 (1970).

However, once the mental capacity of a defendant to stand trial has been determined in accordance with the provisions of Code, 62-3-9, as amended, which in the present case was determined by the letter dated April 8, 1970, from Weston State Hospital, the provisions of Article III, Section 14 of the Constitution of West Virginia, affording the accused a trial without unreasonable delay, take effect as well as Code, 62-3-9, as amended, which provides that upon defendant's discharge from the mental institution the court shall proceed to dispose of the case as if there had been no commitment.

The petitioner having been eligible for release from the Weston State Hospital on April 8, 1970, as having sufficient mental capacity to stand trial, the court should have proceeded to forthwith dispose of the various motions made by defendant and should have set this case for trial. The trial of petitioner could properly have been set during the July 1970 term of court. The trial court was without authority, under the facts of this case, when the petitioner was never adjudged insane, and over petitioner's objections, to order a further evaluation of petitioner's mental capacity at the July 1970 term of court and to conduct a further hearing of the testimony of the five

doctors and psychiatrists and to require a further examination of petitioner by the Appalachian Mental Health Center.

While it is commendable that neither the State nor the court wanted to prosecute a person whose mental capacity would prevent his assisting in his defense, yet if the mental capacity of petitioner was still a question in the mind of either the State or the court, it would have been a simple procedure to have had a hearing before the Mental Hygiene Commission of Grant County, in accordance with Code, 27-3-1, *et seq.,* as amended, to pass upon this matter. There was never an adjudication that petitioner was not sane. After the letter of April 8, 1970, there is nothing to show, nor did petitioner claim, that he was unable to assist in his defense.

The failure to try petitioner for the murder of his wife at the July and November 1970 and the April 1971 terms of the Circuit Court of Grant County were not excused by any of the exceptions contained in Code, 62-3-21, as amended, nor was such failure the fault of the petitioner. The delay at the July 1970 and the two following terms was taken at the risk of the State, and it must abide the result thereof, particularly in view of the fact that petitioner was tried in the same court in November 1970 and April 1971 on the Keplinger murder charge. If petitioner was sane enough to be tried in November 1970 on the Keplinger indictment, what valid excuse can be given for not trying petitioner in April 1971 on the indictment charging him with the murder of his wife? If this had been done the State would not find itself in the present untenable situation. We find that the provisions of Code, 62-3-21, as amended, do apply in this case, and that three terms of court have passed, after the term in which petitioner was indicted, without excuse for such delay, and that petitioner should not be tried on the indictment charging the murder of his wife. *See Ex parte: Hollandsworth* v. *Godby,* 93 W.Va. 543, 117 S.E. 369 (1923); *State* v. *Crawford,* 83 W.Va. 556, 98 S.E. 615 (1919).

The cases of *State ex rel. Farley* v. *Kramer,* 153 W.Va. 159, 169 S.E.2d 106 (1969), *State* v. *Gregory,* 143 W.Va. 878, 105 S.E.2d 532 (1958) and *State ex rel. Smith* v. *De-Berry,* 146 W.Va. 534, 120 S.E.2d 504 (1961), relied on by the respondent are based on different factual situations and therefore are distinguishable from the case before us.

The State would excuse the delay in bringing petitioner to trial on the basis that petitioner had made various motions that had not been disposed of by the court. This is not a valid excuse. From April or May 1970, when petitioner was discharged from the Weston State Hospital, until the November 1970 term the court and the State found sufficient time to conduct further hearing on petitioner's mental capacity, which time could have been used to dispose of the various pre-trial motions made by petitioner.

"The state cannot excuse itself from trying one charged with crime within three terms after the indictment is found against him, upon the ground that he has interposed a demurrer to such indictment, and the court continued the case over one or more terms for the consideration of such demurrer." Point 6, Syllabus, *Ex Parte Bracey,* 82 W.Va. 69, 95 S.E. 593 (1918).

For the reasons herein set forth, the writ of prohibition prayed for is awarded.

*Writ awarded.*