STATE OF WEST VIRGINIA

*v.*

LAWRENCE MAHLON RHODES

(No. 14175)

Decided February 10, 1981.

*Crandall, Pyles, Crandall & Poyourow and Bradley J. Pyles* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *and Tom Trent,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Lawrence Rhodes appeals from a 1972 final judgment of the Logan County Circuit Court sentencing him to a term of twenty-five years confinement on a conviction of armed robbery. He assigns three major errors, that: (1) the court unduly restricted the testimony of his psychiatrists; (2) the three-term rule contained in W. Va. Code, 62-3-21, precluded his trial; and (3) his absence from certain conferences during the trial violated his constitutional right to be present at all critical stages of the trial. We find merit in the first and third ground, but not as to the second.

I.

The circumstances surrounding the delay in this appeal are contained in *Rhodes v. Leverette,* 160 W. Va. 781, 239 S.E.2d 136 (1977). At trial, Rhodes did not contest the fact that he had committed the robbery, but pled not guilty by reason of insanity. On appeal, he contends that certain evidentiary rulings of the trial court, which limited the form of the expert psychiatric testimony at trial, prejudiced his defense and constituted reversible error.

At the time of the trial, the "M'Naghten" rule was the law which controlled insanity pleas in this State.[1] Under this rule in order to be relieved of criminal responsibility, a defendant must have been incapable of knowing the difference between right and wrong and knowing the nature and consequences of his acts. *State ex rel. Burkhamer v. Adams,* 143 W. Va. 557, 103 S.E.2d 777 (1958), *cert. denied,* 358 U.S. 869, 3 L.Ed.2d 101, 79 S.Ct. 102; *State v. Painter,* 135 W. Va. 106, 63 S.E.2d 86 (1950); *State v. Fugate,* 103 W. Va. 653, 138 S.E. 318 (1927); *State v. Harrison,* 36 W. Va. 729, 15 S.E. 982 (1896).

During the appellant's trial a number of psychiatrists and one psychologist testified on the question of the

---

[1] Rhodes' trial in 1972 was prior to *State v. Grimm,* 156 W. Va. 615, 195 S.E.2d 637 (1973).

appellant's mental state at the time the crime was committed. The trial court, in response to an objection by the State, made an evidentiary ruling which severely restricted the form of the psychiatric testimony. The appellant's psychiatric witnesses were permitted to state only their opinions on the ultimate question of whether he was insane.

The appellant's expert witnesses were not allowed to describe his mental condition by referring to the results of the psychiatric and psychological tests that they had conducted on the appellant. They were not allowed to explain the purpose and function of such tests nor describe the test results even though they based their diagnosis of insanity on them. The experts were not permitted to describe the etiology of his mental condition, but were left with a bare medical conclusion couched in the language of the "M'Naghten" rule.

While we have recognized in *State v. McCauley*, 130 W. Va. 401, 406, 43 S.E.2d 454, 458 (1947), that the trial court has considerable discretion as to the admissibility of testimony on the issue of insanity, we are constrained to conclude that the trial court abused its discretion in its severe restrictions on the scope of the psychiatric testimony.

In regard to the evidence that may be introduced on the insanity issue, this Court has never adopted a restrictive position. In *State v. Maier*, 36 W. Va. 757, 15 S.E. 991 (1892), and *State v. Price*, 92 W. Va. 542, 115 S.E. 393 (1922), we recognized that both lay and expert testimony could be utilized. In *Price*, we stated that the insanity of blood relatives of the defendant might be shown "but before such evidence is admissible the duration and general nature of the insanity of such relatives should be shown, as well as that the accused exhibited signs of insanity of a more or less permanent nature which might be attributed in some degree to heredity." Syllabus Point 14, in part, *State v. Price, supra.*

In *State ex rel. Burkhamer v. Adams*, 143 W. Va. 557, 565-67, 103 S.E.2d 777, 783-84 (1958), dealing with evidence at a pretrial insanity hearing, it is clear that this Court

approved the comprehensive inquiry made into the insanity issue. Our latest case is *State v. Myers*, 159 W. Va. 353, 222 S.E.2d 302 (1976), where we stated in Syllabus Point 1:

> "In a criminal trial, a psychiatrist testifying on the issue of insanity should be permitted to make unrestricted use of the information elicited by him during his interview with the defendant and should further be permitted to make reference to information available to him in the form of records or documents whose reliability has been reasonably established and which have been kept in the regular course of professional care or treatment of the defendant, provided that such information either from the interview or the records is information taken into consideration by the psychiatrist in arriving at his diagnosis."

Other courts have adopted much the same rule in regard to the scope of the insanity inquiry. *See United States v. Brawner*, 471 F.2d 969 (D.C. Cir. 1972); *United States v. Chandler*, 393 F.2d 920 (4th Cir. 1968); *State v. McGill*, 101 Ariz. 320, 419 P.2d 499 (1966); *People v. Jones*, 225 Cal.2d 598, 37 Cal. Rptr. 454 (1964); *Tvrz v. State,* 154 Neb. 641, 48 N.W.2d 761 (1951); *Commonwealth v. Neill,* 362 Pa. 507, 67 A.2d 276 (1949).

Our rule with regard to the scope of psychiatric testimony is a part of the general rule in regard to expert medical testimony which permits such experts to relate test results, the purpose of such tests, and the defendant's reaction to such tests. As we remarked in *State v. Pendry,* 159 W. Va. 738, 227 S.E.2d 210, 215 (1976), "such a rule is consistent with the progressive and logical trend of bringing judicial practice into line with the practice of experts themselves when not in court, thereby tending to make their testimony less artificial and more meaningful." *Cf. Somerville v. Dellosa,* 133 W. Va. 435, 56 S.E.2d 756 (1949); *Curfman v. Monongahela West Penn Public Service Co.,* 113 W. Va. 85, 166 S.E. 848 (1932); *Graves v. Katzen,* 112 W. Va. 467, 164 S.E. 796 (1932); *State v. Gunnoe,* 74 W. Va. 741, 83 S.E. 64 (1914).

Of course, the purpose of permitting such medical evidence to be developed is to give the jury as complete an understanding as possible of the defendant's medical and mental condition in order that they might arrive at a proper verdict. Here, we believe the trial court's substantial restriction of the appellant's psychiatric testimony on the issue of his insanity resulted in reversible error[2] as it prevented the jury from having relevant evidence on which to base a decision as to the appellant's insanity.

## II.

The appellant also contends that the trial court lacked jurisdiction to enter the judgment of conviction because prosecution was barred by the State's failure to try him within three terms of his indictment. W. Va. Code, 62-3-21.[3] We have traditionally held that our statutory three-term rule requires an absolute discharge if three unexcused regular terms have passed. *State v. Lacy,* 160 W. Va. 96, 232 S.E.2d 521 (1977); *State ex rel. Spadafore v. Fox,* 155 W. Va. 674, 186 S.E.2d 833 (1972); *State ex rel. Parsons v. Cuppett,* 155 W. Va. 469, 184 S.E.2d 616 (1971).

---

[2] The State does not urge the application of the harmless error rule under *State v. Atkins,* 162 W. Va. 815, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 63 L.Ed.2d 320, 100 S.Ct. 1081 (1980), and we conclude it is not applicable. Here, the appellant's insanity issue was the key defense in the case. It was not a frivolous issue and the failure to permit its development must be deemed prejudicial to the appellant's case. The conviction in *State v. Myers,* 159 W. Va. 353, 222 S.E.2d 300 (1976), was reversed for the failure to permit the defendant to adequately develop his psychiatric testimony, without any discussion of the harmless error point.

[3] W. Va. Code, 62-3-21, in relevant part, provides:

"Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; . . . . ."

Rhodes was first indicted at the May 1968 term of the Circuit Court of Logan County. At that time, he had fled the state, and while the record is not completely clear on the point, it appears undisputed that he remained out of this state until January 11, 1971, at which time he was returned to Logan County on a West Virginia detainer.[4] His absence from this jurisdiction between 1968 and January 11, 1971, tolls the three-term statute for this period. W. Va. Code, 62-3-21.[5] *State ex rel. Smith v. DeBerry*, 146 W. Va. 534, 120 S.E.2d 504 (1961); *State v. Gregory*, 143 W. Va. 878, 105 S.E.2d 532 (1958).

The appellant's argument, however, is that three unexcused terms elapsed between his return in January, 1971, and his trial in July, 1972. The regular terms of the Circuit Court of Logan County commence the second Monday in January, May and September. By an order dated January 18, 1971, the court concluded that there was a substantial question as to his mental compentency, and ordered him to undergo mental examinations by two doctors. By a further order entered on February 17, 1971, based on the reports of these two doctors, the appellant was found not competent to stand trial and was ordered transferred to the Huntington State Hospital for treatment. Counsel for the appellant concedes that the January 1971 term cannot be counted because his insanity precluded the State's ability to try him during this term and insanity of the accused is one of the specific tolling exceptions under W. Va. Code, 62-3-21.

The record also shows that in the middle of the May 1971 term, based on reports from the Huntington State

---

[4] Appellant's counsel in his brief indicates that on February 21, 1968, Rhodes hijacked an airliner to Cuba. He was returned to the United States and was in custody of the federal authorities in Miami, Florida, on February 11, 1970. He remained in custody of the federal authorities until January 4, 1971, when the federal charges were dismissed and he was turned over to the State of West Virginia. (Appellant's Brief, pp. 1-2.)

[5] No question is raised as to the State's diligence in seeking his return to this State. *See State ex rel. Boso v. Warmuth*, 165 W. Va. 247, 270 S.E.2d 631 (1980); *State ex rel. Stines v. Locke*, 159 W. Va. 292, 220 S.E.2d 443 (1975).

Hospital, the appellant was found to have regained his sanity. By an order dated July 7, 1971, he was returned to Logan County for trial. No trial was held during the May 1971 term, nor was a trial held in the September 1971 term. During the January 1972 term, a new indictment was returned against the appellant charging him with the same offense.[6] The appellant was not tried at the January 1972 term but was tried during the May 1972 term on July 12, 1972.

The focal point of the appellant's argument is that the May 1971 term should be counted against the State along with the September 1971 term and the January 1972 term. There is no factual dispute that the appellant was confined in the Huntington State Hospital from February 17, 1971, until shortly after July 7, 1971, when he was found competent to stand trial and ordered returned from the Huntington State Hospital.

The appellant's absence from the Circuit Court of Logan County by reason of his commitment to the Huntington State Hospital during a substantial portion of the May 1971 term of court operates to excuse this term under our three-term statute. His commitment was a result of finding him not to be mentally competent to stand trial. Mental incompetency is the same as insanity and is a recognized tolling exception under our three-term statute which excuses the failure to try the defendant if the failure "was caused by his insanity." W. Va. Code, 62-3-21.

This situation is analogous to another tolling event under W. Va. Code, 62-3-21, that is, where the defendant is absent from the jurisdiction at the time the indictment is rendered and is subsequently returned to the jurisdiction to answer the charges. In Syllabus Point 1 of *State v. Gregory*, 143 W. Va. 878, 105 S.E.2d 532 (1958), we held that:

> "Where an accused under indictment for an offense is without the jurisdiction, and returns to

---

[6] It appears the purpose of the new indictment was to correct a misnomer in the first indictment which alleged the defendant had committed a robbery by violence on one "Charles Chuck Johnson," while the new indictment named the victim as "Harry T. Johnson."

the jurisdiction to answer to the indictment on a day subsequent to the beginning of a regular term of the court having jurisdiction to try him for the offense, the term during which he returned is not to be counted in determining whether accused is entitled to discharge from prosecution by virtue of Code, 62-3-21."

*See also* Syllabus Point 3, *State v. DeBerry*, 146 W. Va. 534, 120 S.E.2d 504 (1961).

A somewhat similar factual situation was presented in *State ex rel. Parsons v. Cuppett*, 155 W. Va. 469, 184 S.E.2d 616 (1971), where the defendant after several mental examinations was committed to Weston State Hospital by a July 18, 1969, court order apparently on the basis that he was incompetent to stand trial. He was later found to be competent to stand trial by the superintendent at Weston and returned for trial on May 2, 1970. The court, without any extensive discussion of the point, concluded that the court terms during this entire period could not be counted under our three-term statute. Included in the tolled period was the entire April 1970 term which had commenced on April 7, 1970, even though the defendant was back before the court on May 2, less than a month after the term opened.

These cases signify that where, as in the present case, the defendant is unable to be tried in a particular term because of his incompetency to stand trial, such term should not be counted under our three-term statute, W. Va. Code, 62-3-21. Thus, in the case at hand, with the January and May 1971 terms removed because of the appellant's incompetency to stand trial, the appellant was tried within the three terms and no error was committed on this point.

### III.

The appellant urges us to reverse his conviction because the record in this case does not reflect the appellant's presence during three *in camera* conferences that occurred during trial, and that he was in fact not present. The most critical of these conferences involved the discussion of the State's objection to the appellant's initial attempts to elicit

psychiatric testimony. It was this conference which resulted in the ruling complained of in the first assignment of error discussed in this case.

The starting point for the analysis of this issue is found in Syllabus Point 6, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977), which states:

> "The defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless."

We have also held in Syllabus Point 2 of *Fields v. Whyte*, ___ W. Va. ___, 242 S.E.2d 463 (1978):

> "The State may by appropriate proof rebut an allegation made by a criminal defendant that he was absent during a critical stage of the criminal proceeding."

The State appears to concede this error since it makes no attempt to prove that the appellant's absence was harmless beyond a reasonable doubt or show by extrinsic proof that he was in fact present.[7]

For the foregoing reasons, the final judgment of the Circuit Court of Logan County is reversed, and the case is remanded for a new trial consistent with the views expressed herein.

*Reversed and Remanded*

Justice Caplan participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justice McHugh did not participate in the consideration of this case.

---

[7] Appellant's counsel urges ineffective assistance of counsel as a ground of error. Since the case is being reversed on other grounds, we decline to discuss this issue.